## FRISCH et al. *v.* MILLER.

A forthcoming bond, under the act of 1842, which recites the levy and that the property was appraised according to law, is void when, in fact, the appraisement was under the *venditioni exponas*, and stated a gross sum as the valuation, no schedule being annexed, as required by the statute.

A false recital in a bond, of a fact within the knowledge of the obligee, avoids it as to a surety. Per Coulter, J.

Property delivered by the sheriff, under such a bond, is no longer in the custody of the law, and therefore cannot, unless by consent, be sold under a *venditioni. Id.*

But if defendant made no objection to such a sale, the surety in the bond is entitled to show, there was other property of defendant which the sheriff did not sell under an execution, or *venditioni* issued after the stay expired.

Where no schedule of the appraised property was annexed to the *fi. fa.*, as directed by the act, parol evidence is inadmissible to charge the surety with the valuation then put on the property delivered under his forthcoming bond.

IN error from the Common Pleas of Clinton.

*May* 27. This was an action, by the late sheriff, on a bond to redeliver goods seized in execution, which was given under the stay

law of 1842. On the trial, he gave in evidence a judgment against Frisch, on which a *fi. fa.* issued, and the present plaintiff returned levied on certain specified personal property. On this a *vend. exp.* issued, to which he returned that he had exposed the property, but it did not sell for two-thirds of its appraised value; and a schedule with an appraisement. This recited that the undersigned had been summoned to appraise, &c., and that they valued and appraised the property, as appears by the schedule annexed, at $577.

The present defendants then sealed a bond to the sheriff, the condition of which recited the levy, and that the property had been appraised according to law, and upon exposing the same to sale no part would sell for two-thirds of the appraised value, and bound the obligors that the property should be forthcoming according to the act of Assembly, in default of which defendant should pay the amount of the valuation or the debt.

Objection was taken and overruled that the appraisement should have been on the *fi. fa.*, and that it was in a gross sum.

A year afterwards an *al. vend. exp.* issued, to which the sheriff returned a part of the debt levied, and that the residue of the property, specifying it, was not forthcoming, and none other delivered. To this writ an appraisement of the property produced was annexed, to which, as well as to the writ, defendants objected.

The plaintiff then, under objection, gave evidence of the value set upon all the goods seized, excepting a cow, having shown an ineffectual search for the original appraisement among the papers of the sheriff and those who assisted to make it. One of the witnesses said that no regular list was made; that he kept a memorandum, and went into the house and figured it out. There was evidence that a list of the property was made out and given to the sheriff, but it was never returned as part of the record.

The defendants offered to show that there was some property not sold by the sheriff, which evidence was rejected.

The court (WOODWARD, P. J.) instructed the jury that the bond substantially complied with the statutory provisions, for it would be an unwarrantable liberty to confine the act to writs of *fieri facias.* That as no schedule had been returned by the sheriff, as he was bound to do, and feeling the difficulty the plaintiff was under from the miserable manner he had executed his duty, the court had permitted evidence to be given of the appraisement. From this parol testimony the jury were to find the appraised value, and not take into consideration the second appraisement, which was wholly irregular.

The errors assigned were in admitting in evidence the *vend. exp.*

appraisement and bond attached; parol evidence of the appraisement; and the instruction that the jury were to find the appraised value from the evidence.

*Beardsley* and *Patterson*, for plaintiffs in error.—The bond is not in accordance with the act, for it stipulates that defendant shall return the property, instead of the defendant and the surety. No appraisement was made on the *fi. fa.*, nor was any schedule returned, and these render the whole proceeding nugatory, for the act, being in derogation of right, must be strictly followed. Nor could the subsequent unauthorized appraisement on the *al. vend.* be admitted to cure the sheriff's neglect.

*Armstrong*, contrà.—The first error embraces the whole case. The bond in the present case complies with the act of 16th July, 1842. The rule that a bond is void whose terms are not in compliance with the provisions of a statute by which it is required, is restrained to cases where the condition is to do something which the statute does not require, or where it contains a provision which the statute does not authorize; 16 Serg. & Rawle, 49. Although a bond may be void as a statutory obligation, yet an action may lie on it at common law; 5 Watts, 468. A *substantial* compliance with the statute is sufficient; 1 Peters, 47; 4 Wash. C. C. R. 620.

The act of 16th July, 1842, was passed for the advantage of defendants, and they must comply with every thing required from them, before they can claim its benefits. The defendant, who has failed to comply with any of the provisions of his bond by not delivering the property levied on to the sheriff at the end of the year, or other personal property in its place, cannot object that the sheriff has not returned a schedule and appraisement with his *fi. fa.* He has nothing to do with the sheriff's return, or whether he makes a return. His liability arises out of his bond alone. The schedule and appraisement might be evidence of the value of the goods, but not the only evidence. The defendant could not complain that he did not know the value of his own property, and his surety would not stand on more advantageous ground; 16 Serg. & Rawle, 50. When he signed the bond, he must be supposed to have acquainted himself with all the information necessary to his security and protection; and as it recited that the property had been "*appraised according to law*," the obligors must be presumed to have seen the appraisement, and thus to have known the extent of their liability, and for no other purpose could it be important to either defendant

or surety ; and they may be supposed to have waived all besides, so far as they were concerned.

*June* 7. COULTER, J.—The act of Assembly of 16th July, 1842, requires the sheriff to return a schedule of the property levied upon by virtue of the writ of *fieri facias,* and if it did not sell for two-thirds of its appraised value, according to the said schedule, to deliver it back to the defendant in the execution upon his complying with the conditions mentioned in the said act. In the case at bar, the sheriff did not have the property appraised on the writ of *fi. fa.,* but returned a levy on the property therein described. The plaintiff issued a writ of *vend. exponas,* upon which an appraisement was returned, in bulk or in the mass, at $577. The sheriff also returned that he exposed the property to sale, and that it did not bring two-thirds of its appraised value, with a bond of the plaintiffs in error to him under the provisions of the said act. In that bond it is recited in the condition that the property levied upon had been appraised according to law, &c., and was delivered back to the defendant, &c. At the expiration of the year, the plaintiff issues an *alias vend. exponas,* to which he returned that he had sold part of the property to the amount of $106, and that the residue, nor any property in its place was produced to him. This action is instituted on the bond. The plaintiff offered in evidence the above proceedings, to which the defendant excepted. Exception overruled by the court, and bill sealed.

It is not necessary to determine whether all the proceedings subsequent to the *fi. fa.* were void or otherwise, although I am quite at liberty to say, that no authority which is known to me authorized the sheriff to make an appraisement on the *venditioni exponas.* It would scarcely be contended, that the plaintiff and the sheriff might lawfully omit holding an inquisition on real estate levied upon by the *fi. fa.,* issue a *venditioni exponas* and make a valid inquisition on that writ. And yet there is but a shade of difference between the two cases. In either case the party and the sheriff would undertake to substitute their own will in the place and stead of the positive directions of the statute which they might choose to disregard.

Ministerial officers must be held to the observance of plain rules prescribed by statute for the protection of parties. It is quite as easy to follow the plain beaten path as to wander into by-ways unknown to the law; and if a charter of immunity is granted by the court to such practices, we shall have, by and by, instead of certainty, security and comeliness, a mass of chaotic irregularity,

governed by no rule but the wilfulness of parties and officers. But aside from these considerations there is something like a fraud practised upon the surety in the bond. It is stated that the property taken in execution was appraised according to law. Now that was a false suggestion undoubtedly, and in a matter which I think will be shown, in examining another point, material to the surety. It was a false suggestion, because the law required the property to be appraised on the *fi. fa.*, and no law authorized them to be appraised on the *vend. exponas*. It was a false suggestion, because the law required a schedule of the property levied upon and appraised to be returned with the *fi. fa.*, which was not done either on the *fi. fa.* or *vend. exponas*. And the want of this paper was such a radical defect as to render the whole proceeding vicious and inoperative as against the defendant and his surety in the bond. It was designed for their protection by the statute; they neither waived nor dispensed with it; on the contrary, the bond itself affords an irresistible implication that they believed it was returned.

The plaintiff below seemed to be sensible of this infirmity in his case, and offered to supply its place by parol evidence that there was a list made out of the articles appraised, and that the appraisers handed it to the sheriff, who lost it; which evidence, such as it is, was received, and the defendants excepted. The learned judge observed to the jury, that there "was something *like evidence* of the appraised value of every article except the black cow. But similitudes are apt to deceive, and the jury ought to have been governed by real proof, not its similitude. Two of the appraisers were called, Platt and Irwin. Neither of them pretended to recollect the appraised value of the articles. Irwin believed no regular list was made; he kept a memorandum and went into the house and figured it out, as he said; did not give his memorandum to the sheriff. One Brown was called as a witness. He said that he was the plaintiff's agent; that he went with the sheriff, made out a list of the articles, we presume, for the sheriff and appraisers. He said he had lost the paper; had hunted for it. He swore to the amount of the appraisement of a number of articles. Platt said he thought the list was given to the sheriff; he or Frisch got it. Such is the evidence given to supply the want of the statutory evidence. Independent of the entire want of security and safety in the testimony of an individual casually present, as to the appraised value of a great number of articles after the lapse of years—which insecurity is more apparent from the fact that no one else, even those officially engaged in the transaction and under oath, recollected

any thing about the appraised value—it cannot be allowed to supply the place of the statutory proof. It was in fact and in law no evidence. The paper alleged by Brown to have been made by him, would not have been evidence if it had been preserved, because it was not adopted by the appraisers, and returned by the sheriff. If the sheriff had returned a regular appraisement and schedule with his writ, and it was lost afterwards in the office of prothonotary, by fire or untoward accident, it would be competent perhaps to supply its place by parol proof of its execution and loss. But the fatal defect here is, that the legal evidence never existed. It might, with almost as much propriety, be contended, that if an inquest was made out, and the sheriff returned no inquisition on real estate, that the defect might be remedied by giving parol proof of what the inquest fixed as the annual value.

The defendant offered to prove that witness was present at the sale on the *alias vend. exponas*, and that he saw considerable property (we may presume of defendant) which was not sold. Excepted to by plaintiff, rejected, and bill of exception. This exception may be considered in connection with the exception of defendant to the admission of the *alias vend. exponas* in evidence.

If the proceedings had been regular, the property appraised on the *fi. fa.* and an *alias fi. fa.* issued at the end of the year, the sheriff would have been amply justified in taking all the property of the defendant at the place of sale, and disposing of it to the amount of the execution, even if it was not the identical property named in the first levy; and this would have been fair dealing with the surety. But I presume the sheriff thought he was not authorized to sell any thing but what he was commanded by his writ to sell. The record shows that there was no property in possession of the sheriff, or in the custody of the law. It had been redelivered to the defendant, and I presume it might have been levied upon by a subsequent execution, or lawfully sold by him. The peculiar office of a *vend. exponas*, as it regards personal property, is to enforce the sheriff to sell when he has returned a levy unsold for want of buyers, and to bring him into contempt for not selling; 2 Saund. 71 b, n.; 11 Serg. & Rawle, 304; and when it is supposed the property returned levied will not satisfy the debt, the plaintiff may have a clause of *fi. fa.* added, to justify the levy and sale of property beyond what is described in the *vend. ex.* This practice shows that the sheriff is not authorized to sell by the *vend. ex.* beyond what is therein commanded to be sold.

There was nothing, therefore, as it would seem, to justify the

issuing of the second *venditioni exponas*, which was a nullity. The proper writ would have been an *alias fi. fa.*, upon which the sheriff could have taken and sold any property of the defendant that was forthcoming, and in his power. The bond was intended to secure the plaintiff, if, at the end of the year, property to satisfy the execution was not forthcoming. It was not necessary that there should have been an actual manual delivery into the hands of the sheriff of the property on the ground at the time of sale. The surety ought to have been allowed to show, if he could, that property sufficient to satisfy the execution was there, and that the defendant made no objection to the sale.

The last exception is to the instruction given by the court to the jury, " that if the proof of the appraised value of the articles not produced, was such as to satisfy them, they will find the appraised value with interest, unless it should overrun the judgment, and in that event the balance of the judgment." Yet it appears that the black cow, concerning whose appraised value the court say there was no evidence, was among the missing: how the jury was to ascertain her appraised value *non constat.*

But that is a small oversight. The error of the court was, in not telling the jury that the evidence was wholly insufficient. A surety is entitled to the protection of the law, and equity holds him discharged, when he who seeks to bind him does not observe the most exact good faith. What the law requires the obligee to do, must be performed with fairness and honesty. It was the duty of the sheriff, by express direction of the statute, to return the schedule. That was the criterion of value of the different articles to which the surety had a right to look; it was part of the appraisement. And that the appraisement was legally made, the surety was fully authorized and induced to believe, for it is so nominated in the bond. He could have had no apprehension that he could be compelled to abide, in its stead, by the shadowy recollection of a witness dimmed or obliterated by time. That was a risk which he did not assume by his contract. It requires no sharpness of mental vision to perceive the difference of hazard. In the one category the amount is certain; in the other, subject to vicissitude, depending on the memory of a weak, unknowing, or perhaps dishonest witness; a difference that would startle any man. The law will not be over nice in inquiring whether the surety has suffered injury in the particular case; it is enough if he may be prejudiced by the official misfeasance, carelessness, or omission of the obligee. The proper writ was not issued, at the end of the

year, to enable either the defendant or his surety to comply with the alternative condition of the bond. The whole proceeding is beyond the plain directions of the statute. We are of opinion, that there is error in the proceedings and judgment.

Judgment reversed, and a *venire de novo* awarded.