# Kightlinger's Appeal.

1. Where, after judgment, execution and levy, the court grants a rule "to show cause why the judgment should not be opened, and the defendant be let into a defence, all proceedings to be stayed in the meantime, lien of levy to remain," the fact that nearly four years elapsed before the discharge of the rule, will not affect the lien of the levy, so as to give priority to subsequent execution creditors who had levied on the same goods.

2. Upon the granting of a rule to open judgment, after a levy has been made thereunder, the lien of such levy is preserved, pending such rule, by operation of law. A fortiori will the lien be preserved where it has been specially so directed in the order granting the rule.

3. An indorsement on a fi. fa., signed by the sheriff and his deputy, certifying that by virtue of the within writ he had levied on certain personal property, describing it, though undated, is a valid levy, where, it sufficiently appears from other dated indorsements by the sheriff on the writ, and from entries on the record, that the date of the levy was within a certain period, not exceeding thirteen days.

November 28th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

[Kightlinger's Appeal.]

CERTIORARI on appeal to the Court of Common Pleas of *Crawford county:* Of July Term 1882, No. 191.

This was an appeal by R. B. Kightlinger, administrator of W. H. Kightlinger, deceased, from a decree of said court distributing the proceeds of a sheriff's sale of personalty sold in execution, as the property of James H. Davis.

The auditor to whom the case was referred reported the following facts :—The fund for distribution, $1,476.10, was made from the sheriff's sale of personal property of James H. Davis on writs of fi. fa. issued upon two judgments against said Davis, in favor of A. Fuller and A. S. Davis, to May Term 1880, and the controversy is between these two executions and a writ of alias fi. fa. previously issued to April Term 1877, No. 320, on a judgment in favor of William H. Kightlinger, which, after levy, was stayed by order of court.

The Kightlinger alias fi. fa. was issued March 26th 1877 against H. M. Stitzer and James H. Davis, upon which the following indorsements are found :—

"Received March 26th 1877, at 12:30 p. m.

GEO. P. RYAN, Sheriff.

"By virtue of the within writ I have levied upon all the following property : 3 horses, 14 cows, 10 head young cattle, 40 sheep, 7 lambs, 4 hogs, 2 wagons, 1 top buggy, 1 other buggy, 1 sleigh, 1 pair bobs, 2 sets double harness, 2 single harness, lot of hay, oats and corn, lot of farming utensils, lot of household goods and all other personal property of the defendant.

O. H. DICKSON, Deputy.

GEO. P. RYAN, Sheriff.

"April, 1877, returned, stayed by order of court.    So answers.                         GEO. P. RYAN, Sheriff."

When the levy was made the deputy-sheriff went to the house of James H. Davis, and into the kitchen, and told Mr. Davis he wanted to see him. They stepped out of doors, when the officer told his business. They went up stairs when Mr. Davis gave the officer a list of his property, and he wrote it down as above. He did not go through the house to see all the household furniture, nor through the barns to see the stock. It did not clearly appear the he did not see any of the stock at this time. He was out subsequently to put up bills and may then have seen it. Whether this was before or after the order staying the writ does not appear. Mr. A. Fuller, one of the claimants of the fund, was working for Mr. Davis, and was present when the levy was made and knew of it.

On the 6th of April, 1877, James H. Davis, by A. S. Davis, his brother, and the other claimant of the fund, made application to the court to stay proceedings and open the judgment and let him into a defence, and thereupon this order was made :

·[Kightlinger's Appeal.]

"April 6th 1877. Rule to show cause why the judgment should not be opened and defendants let into a defence, all proceedings·stayed in the meantime. Lien of levy to remain."

This rule was granted by Judge PETTIS and went on several argument lists, but was continued to February 4th 1878, when his honor, Judge. CHURCH, having been of counsel, continued the case· for a special list. The record shows nothing more · until January 17th 1881, when the rule was discharged.

While the said rule was pending, to wit, April 19th 1880, the two. writs of A. Fuller and A. S. Davis were issued, and levy was made on all the property of James H. Davis, including that described in the indorsement on the Kightlinger writ, and other property subsequently acquired by the defendant. Said property was sold May 1st 1880, for $1,476.10.

Fuller and Davis claimed before the auditor that they were entitled to the whole fund, and that Kightlinger was not entitled to participate in the distribution, because: (1.) The alleged levy under the Kightlinger writ was invalid because it did not appear that the property was in the power or in the view of the sheriff at the time of the alleged levy. (2.) If the Kightlinger levy was valid, it had· lost its lien, as against subsequent executions, by reason of the great delay in getting the rule disposed of by the court.

The auditor, however, held that the levy under the Kightlinger writ was valid, the sheriff having gone to the premises, where he certainly saw some if not all the property described in. the levy, and all the property was within his power at the time ; further, that during the pendency of the rule to open judgment and set aside the execution, the lien of the levy was preserved not only by operation of law, but by the express terms of the order of court granting said sale ; and that there was no evidence of laches by the plaintiff in having the rule disposed of, which would operate as an abandonment of the levy.

The auditor therefore, after ascertaining the proportion of the fund for distribution, which arose from the sale of the property embraced in the Kightlinger levy, awarded the same, viz : $396.75, to the Kightlinger writ, and the balance of the fund, after deducting expenses of audit, to the Fuller and Davis writs, the latter of which was only paid in part.

Exceptions filed by Davis to the auditor's distribution of any portion of the fund to the Kightlinger writ were sustained by the court, CHURCH, P. J., saying, in an opinion filed :—" There is no legitimate evidence that any levy was made on the Kightlinger writ, No. 320, April term 1877. The sheriff's return to the writ is 'stayed by order of court.' To be sure there are a few lines of writing on the inside of the paper which purport

to be a levy, or an attempt at levy, but the writing is without date or other special mark of identification, and may have been put there after the order for the stay and after the return. The writing is, however, not a part of the record, is not entered upon the record and no allusion is made to it by the officer, and if he ever meant to use it for any purpose, he seems by his return to the writ to have abandoned it. The attempt by the plaintiff in the writ to enforce as a lien this undated and unrecognized indorsement, made, if at all, two or more years before the sale of the defendant's personal property, is certainly a novel one. The sheriff's return to his writ is the only evidence we can have of the sheriff's action upon it. As before stated, there is no date to this alleged paper levy, but conceding it to have been actually made before the order for stay, the sheriff, by his return to the writ, virtually and legally abandoned his levy. Even the parol evidence shows that he never took possession of the property alleged to have been levied upon. This ought to have been done in some manner and at some time. Our Pennsylvania system permits much more laxity in the levying upon goods than is allowed in any other state or in England. Yet in Wood v. Van Arsdale (3 R. 401), it is stated that while the sheriff need not take possession of personal property at the time of his levy, he ought to take possession within a reasonable time thereafter so as to apprize everybody of the fact of there being a levy, or of the taking of the goods in execution. . . .

"The money which is the subject of this controversy was made on a levy and sale of defendant's personal property, in May 1880, three years after the return of the Kightlinger writ, and in the sheriff's return to the writ bringing the money into court no mention or reference is made to this former writ. He treats it as if it had never existed. To allow this old defunct execution to participate in this distribution would be carrying the doctrine of secret and unrecorded liens farther than it has ever been carried in this state before. These are not favored, and are not to be extended or made effective by implication or construction."

The court therefore held that the Kightlinger writ was not entitled to participate in the distribution, sustained the exceptions, and awarded the sum which the auditor had appropriated to the Kightlinger writ to increase the award to the Davis execution.

Kightlinger's administrator thereupon took this appeal, assigning for error the above action of the court.

*D. C. McCoy & Son*, for the appellant, cited—Shafner *v.* Gilmore, 3 W. & S. 438; Wilson, Sieger & Co.'s Appeal, 1

Har. 426; Fitler *v.* Patton, 8 W. & S. 455; Phillips *v.* Kuhn, 7 Phila. Rep. 146.

*W. R. Bole,* for the appellee.—The alleged levy was a mere paper levy, written by the sheriff at the dictation of the defendant, not in view of the goods, which consisted of farm stock and implements, and no seizure was made. Such a pretended levy has no validity: Titusville Novelty Works' Appeal, 27 P. F. S. 106; Lowrie *v.* Coulter, 9 Barr 349; Wood *v.* Vanarsdale, 3 Rawle 401. Mere writing upon his writ an assertion of a levy by the sheriff is no levy: Schuylkill County's Appeal, 6 Cas. 358. The rights of successive execution creditors are fixed by the return to the writs: Mc Lelland *v.* Slingluff, 7 W. & S. 134; Weidensaul *v.* Reynolds, 13 Wr. 73; Commonwealth *v.* Contner, 6 Harris 446; Mentz *v.* Hamman, 5 Wh. 150. The Kightlinger levy, if originally valid, was abandoned by the sheriff, who never took possession of the goods thereunder; and also by Kightlinger by his undue laches in getting the rule to open the judgment disposed of by the court.

Mr. Justice GREEN delivered the opinion of the court, December 30th 1882.

On the back of the alias fi. fa. for the use of Kightlinger *v.* Stitzer and Davis is written the following:

"By virtue of this writ I have levied upon all the following property: Three horses, fourteen cows, ten head of young cattle, forty sheep, seven lambs, four hogs, two wagons, one top buggy, one other buggy, one sleigh, one pair bobs, two sets double harness, two single harness, lot of hay, oats and corn, lot of farming utensils, lot of household goods, and all other personal property of the defendants.

"O. H. P. Dickson, Deputy.

"George P. Ryan, Sheriff."

The writ was issued on March 26th 1877, and on 6th April, 1877, on the filing of an affidavit of one of the defendants, the court below granted a "rule to show cause why the judgment should not be opened and defendants let into a defence. Lien of levy to remain." The sheriff then made an additional endorsement on the writ in these words; "April 1877. Returned stayed by order of court. So answers, George P. Ryan, Sheriff." The writ with both the foregoing endorsements upon it was returned into the Prothonotary's office where it remained on file. It is a part of the record in this case and is so returned to this court. The auditor found as a fact that the levy was made by the deputy sheriff, and states the testimony and the reasons upon which that finding was based. Notwithstanding this the learned court below decided that there

was no legitimate evidence that any levy was made on the writ, and characterized the first of the foregoing endorsements as " a few lines of writing on the inside of the paper, which purport to be a levy or an attempt at levy, but the writing is without date or other special mark of identification, and may have been put there after the order for the stay and after the return." We are not able to assent to this view of the subject. There certainly was legitimate evidence of a levy both by the return of the sheriff and by evidence aliunde. We know of no reason why the first return signed by the deputy and by the sheriff, in which it is distinctly asserted that, "by virtue of this writ I have levied upon all the following property," is to be rejected and disregarded as " a few lines of writing," placed there without authority. The only reasons given for this treatment of it, are that the writing is without date or mark of identification, and may have been put there after the order was granted staying the writ. But these reasons are not satisfactory. It is true the writing is not dated but as the writ was issued on March 26th 1877, and the order granting a rule to show cause was made on April 6th 1877, thirteen days later, and specially directed that the lien of the levy should remain, it is sufficiently certain that the levy was made between March 26th and April 6th. The court, by its order, recognized the fact that a levy had been made, and only stayed the proceedings and allowed the rule to show cause, upon condition that the lien of the levy should remain. How then can the same court now say in the face of its own order that there was no levy? And how can it be presumed that the writing was put upon the writ after the order was granted, when the order itself assumes the existence of the fact of levy which is specially set forth and reported in the writing? As to identification it is enough to say that the writing has appended to it the undisputed official signatures of both the sheriff and his deputy. There is not a scrap of testimony to show that the endorsement of levy was either a spurious writing, or that it was placed upon the writ after the order for the stay. There is of course no right to make a presumption of either of these things as that could only be done by reversing the maxim, *omnia præsumuntur esse rite acta.*

The only remaining question is whether the appellant lost his lien by reason of the delay in disposing of the rule to show cause. But why should that delay, of its own force alone, deprive him of his lien? He did not cause the delay. It did not occur by means of his procurement. He gave no directions not to proceed, as was the fact in most of the cases cited. On the contrary, he was vigilant. He issued his writ, caused his levy to be made promptly, and was then arrested in his proceedings by the interposition of the defendant, and the positive

order of the court.   This order was made against the appellant
and against his interests.   What could he do thereafter?
Certainly he could not issue another writ until the rule to show
cause was disposed of.   It has not been shown that he was in
any manner, or in the least degree, responsible for the delay in
disposing of the rule.   Moreover his lien by virtue of his levy
was specially protected by an order of the court, and hence was
not to be lost by reason of delay in disposing of the rule.   It
seems that although the rule to show cause was granted on
April 6th 1877, it was continued on the argument list at various
times until February 4th 1878 when the learned judge of the
court below, having been of counsel in the case, but having
come upon the bench pending the proceedings, continued it for
a special list.   The auditor reports that the record shows nothing
more until January 17th 1881, when the rule was discharged.
It was decided in Batdorff *v.* Focht, 8 Wr. 195, and Bain *v.*
Lyle, 18 P. F. S. 60, that a fi. fa., having a lien on goods, does
not lose its priority over subsequent executions by reason of a
judicial order staying proceedings until a rule, taken by the
defendant, should be disposed of, although there was no stipula-
tion in the order that the lien should remain.   *A fortiori* will
the lien be preserved where it has been specially so directed in
the order.   In the case of Bain *v.* Lyle, supra, the present Chief
Justice, on p. 65 says: "The execution creditor can not lose
his lien without some neglect or default on his part, without
at least having a full remedy against the sheriff on his official
bond;" and he then quotes from Judge WOODWARD's opinion in
Batdorff *v.* Focht thus: "It is a general principle that inter-
locutory orders shall not impair vested liens.   It is usual to
accompany such orders with a stipulation that the lien of the
writ, which is the subject of the order, shall remain until the
motion has been disposed of on final hearing; and this is a
prudent and proper practice.   But when, as in this case, it is
omitted, the lien must nevertheless be regarded as preserved
—for it is one of the vested legal rights of the plaintiff, and can
no more be sacrificed by an edict of the court without a hearing
than any of his other civil rights whether of liberty or property."
If the lien is preserved during the pendency of the proceedings
on the rule to open the judgment, how shall it be said to be
lost, while they are pending, merely because of the lapse of
time required to dispose of the rule?   If that were so the order
preserving the lien would be nugatory.   It is not a question of
abandonment by the sheriff, but of the mere effect of the lapse
of time, that we are dealing with.   The Auditor only allowed the
appellant to participate in the distribution to the extent of the
value of the property covered by his original levy and still
remaining in the possession of the defendants.   As to these

[Cooper v. Shaver.]

articles the subsequent execution creditors had notice by the record of the proceedings under the appellant's judgment and execution. In Perit v. Wallis, 2 Y. 524, this court held that, when goods levied on were not removed by the sheriff during two years, yet the lien of the plaintiff in the execution was not lost. In that case there were no proceedings to open the judgment and no order preserving the lien, and the same is true of the case of Lewis v. Smith, 2 S. & R. 142, where a still greater delay was held not to divest the lien. Without determining whether such delays would now be allowed in ordinary cases, it is enough to say in the present case that the appellant's lien was protected by a positive order of the court, which by its very terms was operative until the proceeding, in which it was made, was determined. That protection was effective at the time of the issue of the subsequent writs in 1880, and hence it follows that the Auditor was right in distributing to the appellant the proceeds of the property which yet remained and was subject to the lien of his writ. The decree of the court below must therefore be reversed and the distribution made by the auditor restored.

> Decree reversed and it is ordered that the fund in court be distributed in accordance with the report of the Auditor, the costs of this appeal to be paid by the appellees.