## Latsha v. Latsha

*J. Dress Pannell* and *James E. Snyder*, for petitioner.
*Paul H. Rhoads* and *John C. Kelley*, contra.

HARGEST, P. J., March 4, 1935.—Judgment was entered in this case upon a note signed by the defendant, and the First National Bank of Elizabethville petitioned to have the judgment opened. That proceeding terminated in an opinion of this court, reported in Latsha v. Latsha, 39 Dauph. 281, in which we declined to open the judgment. In that proceeding we made the following order:

"Pending the determination of this rule, the execution issued on said judgment and all proceedings thereunder are directed to be stayed, lien of levy to remain."

The opinion above referred to was filed July 17, 1934. It had been delayed partly by counsel and partly by the serious illness of the writer. After the opinion was filed, the sheriff fixed August 24, 1934, as the day for the sale of the personal property upon which the levy had been made. The sheriff was unable to conduct the sale on August 24th, and fixed August 31st as the date on which the sale should be held. Neither the sheriff nor a deputy was able to go to the upper end of Dauphin County to post the necessary bills in order to advertise the sale properly and it was necessary to fix a later date. The sheriff thereupon fixed September 14, 1934. On that date the First National Bank of Elizabethville presented another petition asking that the sale be stayed, alleging that the petitioner was also a judgment creditor, averring that the sheriff had made no return of the original writ of fi. fa. issued, and that the adjournments of the sale on August 24th and 31st were illegal; that the

sheriff had not given notice of the sale on September 14th as required by law and that the sale on the original fi. fa. would be unlawful. To that petition the defendant answered, showing the levy which had been made by the sheriff and that the postponement of the sale from August 24th to August 31st and from August 31st to September 14th was due entirely to the press of business which required the sheriff's attention and that the sheriff had, more than 6 days before the date set for the sale, posted six handbills, complying with all the requirements of law, averring that the sale of September 14th would not have been illegal. Later the plaintiff presented her petition, showing that the sheriff had returned the writ on November 26, 1934, without having made sale because the court on September 14, 1934, ordered all proceedings to be stayed on the petition of the First National Bank of Elizabethville and asking that a writ of venditioni exponas issue. We thereupon granted a rule on that petition.

The question now before us is whether the sheriff may proceed under the original execution or whether it is necessary to grant a writ of venditioni exponas. The First National Bank of Elizabethville seems to contend that because the property was not "speedily sold, or sold within a reasonable time" and because the plaintiff permitted the defendant to carry on his work and occupation with the property under levy, and without notice to the public and because there was not a true and legal advertisement or notice of the attempted sale, the execution issued by Lesta M. Latsha should be postponed to the levies and liens of the First National Bank of Elizabethville.

As to whether or not the proper notices were given, no replication having been filed, we should take the answer of Lesta M. Latsha to the bank's petition to be true, which answer avers that the sheriff specifically advised her that his deputy, Cornelius Nelley, posted the six

handbills, as required by law. Counsel on both sides, however, verbally agreed that if anything was to be predicated upon this question either side would subsequently have the right to take depositions. We, however, do not predicate our judgment on whether the proper notices were given, inasmuch as the sheriff can yet give the notice required by law before any forthcoming sale.

As to the contention in the brief of the bank that the plaintiff had permitted the defendant to carry on his work and occupation with the property under levy and without restraint we have no evidence, nor even any averment in the bank's petition to that effect.

As to the delay, we have already stated that that was caused partly by counsel and partly by the serious illness of the writer. We have no averment showing that the plaintiff in this execution in any way contributed to this delay and our familiarity with the case enables us to find that she did not do anything actively, at least, to cause the delay.

The matter therefore comes to the question as to whether or not the plaintiff had lost her rights under the original levy because the sheriff failed to make a return until November 26, 1934, and whether the writ of venditioni exponas should now issue.

It seems now to be settled by cases that are venerable with age, the doctrines of which have not been in any way later impaired, that a judicial order staying an execution until a rule is disposed of but providing that the lien of the levy shall remain does not deprive the execution creditor of his lien.

In Batdorff v. Focht & Brother, 44 Pa. 195, an execution was stayed by order of the court, and while those proceedings were pending subsequent executions were issued and it was held that even though the court did not order the lien of the levy to remain "the lien must nevertheless be regarded as preserved, for it is one of the vested legal rights of the plaintiff, and can no more be

sacrificed by an edict of the court, without a hearing, than any of his other civil rights, whether of liberty or property." See also Realty Co. v. Gioshio, 50 Pa. Superior Ct. 185, 187, 192.

In Spang v. The Commonwealth, 12 Pa. 358, 359, it is said:

"The mere rule to open the judgment interposed no obstacle to the exercise of the right to sell, with which the seizure invested the officer; nor did the return of his writ or his subsequent retirement from office deprive him of it. By the writ of *fi. fa.* he was clothed with the power of disposition, and having once seized the goods in execution of the writ, he was bound, even after his general authority had ceased by expiration of the term of his office, to proceed to sell, and to do every act necessary to its completion. The return of the *fi. fa.* would not prevent the exercise of this function, for a sheriff may sell after such return, and without a *venditione*".

In Gillespie v. Keating, 180 Pa. 150, it is held:

"An execution creditor who places his writ in the hands of the sheriff with instructions to make the money upon it, and who does not countermand or modify his instructions, or in any way interfere with the execution of the writ, does not lose his lien by the delay of the sheriff in making the sale."

In Kightlinger's Appeal, 101 Pa. 540, it is held:

"Where, after judgment, execution and levy, the court grants a rule 'to show cause why the judgment should not be opened, and the defendant be let into a defence, all proceedings to be stayed in the meantime, lien of levy to remain,' the fact that nearly four years elapsed before the discharge of the rule, will not affect the lien of the levy, so as to give priority to subsequent execution creditors who had levied on the same goods." See also McGinnis v. Prieson, 85 Pa. 111.

A junior execution creditor cannot secure preference

over a senior by the mere failure of the sheriff to make a return of the senior writ.

In Commonwealth v. Magee, 8 Pa. 240, 248, it is said:

"Though it would be better, regularly, to make return of all such writs, it seems to be settled he [the sheriff] need not do so, unless specially ruled".

The lien of an execution continues beyond the return day on such goods as have been levied upon before the return day: Knoll's Appeal, 11 W. N. C. 511; Farrel v. Copeland, 18 W. N. C. 94; Little v. Lane, 15 W. N. C. 380.

The omission to return the writ on the return day does not destroy the lien: Keeler & Co. v. Beishline et al., 1 Pa. C. C. 287.

Most of the cases deal with the failure to return on the return day after a sale or an attempted sale. In such case there is something to advise the court about and therefore some reason for making a return and even in such cases it is held that the lien remains although the return is not made. But where the court itself has prevented the sheriff from doing anything, by an order such as the one in the instant case staying all proceedings and directing the lien to remain, there certainly could have been no point in making a return to advise the court of something the court itself did, and which has not been undone. Therefore, there was no occasion whatever for a return prior to the order of the court of July 17, 1934, which order permitted the sheriff to go on with the sale. The sheriff himself fixed August 24th, then continued the sale to August 31st and further continued it to September 14th, when he was prevented from holding the sale by the order obtained on the petition of the junior execution creditor, the First National Bank of Elizabethville. Has the sheriff then done anything which prejudiced the rights of the senior execution creditor? The delays by the sheriff certainly are not unreasonable. The allegation is that the sheriff did not post handbills ac-

cording to law. This is denied by the answer and the answer must be taken as true.

In Wadas v. Sharp, 27 Pa. Superior Ct. 233, it is held:

"A delay by the sheriff in executing a writ caused by a well-founded belief on his part that the defendant was endeavoring to pay the judgment, and that no one was being injured by the delay, cannot be taken advantage of by a junior execution creditor to defeat the lien of the first execution."

The purpose of an execution is to obtain satisfaction and not security for a debt; and, the employment of an execution for any other purpose than satisfaction is a perversion against its design and a fraud against third persons: Dunham, Buckley & Co. v. Rundle et al., 4 Pa. Superior Ct. 174, and where it is clear that an execution is issued for such purpose it would not be available against subsequent executions: Earl's Appeal, 13 Pa. 483. So, where there is collusion between the execution creditor and the sheriff to permit the goods to remain in the custody of the defendant and allow the sheriff's deputy to make private sale of the goods in the ordinary course of business, the lien of the prior execution creditor may be postponed: Bingham v. Young, 10 Pa. 395. There is nothing in the instant case to show any collusion. The execution creditor is the daughter of the defendant. The goods levied upon consisted of a lot of livestock, chickens and farm utensils on the farm occupied by the defendant and the execution creditor. The sale in this case was postponed for a year and a half through no fault of the sheriff or the execution creditor. The sheriff had no place to take care of the livestock and chickens. It might have been of disastrous consequences to have required him to have taken all this property in actual custody until the disposition of the rule, which was originally obtained upon the petition of the junior creditor, National Bank of Elizabethville.

So we see nothing in this case which would sustain the

proposition that the lien of the plaintiff should be postponed to the lien of the bank because of any conduct either on the part of the plaintiff or the sheriff.

The next question is whether we should now permit a venditioni exponas to issue.

In Missimer, Assignee, v. Ebersole, 87 Pa. 109, it is held:

"Where a new execution issues without disposing of the levy on the old one, and there is nothing to connect the property levied upon under the alias with the property seized under the fi. fa., excepting similarity in description, the alias fi. fa. and the levy under it amount to an abandonment of the levy upon the original fi. fa., and the lien thereof is gone.

"Where the lien of the fi. fa. was thus lost by an abandonment of the levy, the rights of an intervening assignee for creditors attached, and there could be no valid levy under the alias fi. fa. upon the assigned property."

It is thus apparent that at no time in these proceedings could the plaintiff without imperiling her lien have issued an alias fi. fa.

The sheriff made the following return, November 26, 1934:

"The sheriff returns the within writ without having made sale pursuant thereof for the reason that on November 14, 1932 your honorable court made an order staying all proceedings under this execution and on September 14, 1934 another order further staying all proceedings under this execution was issued. In both orders your honorable court directed that the lien of the levy was to remain."

In other words, the sheriff advised the court that he had not sold because the court prohibited him from selling. If, under the authorities which we have heretofore cited, the lien remained and the sheriff was authorized to sell after our order of July 17, 1934, discharging the rule, certainly the order of September 14, 1934, for staying

the sale and directing the lien of the levy to remain preserved the lien.

In Spang v. The Commonwealth, 12 Pa. 358, it is held that even after the expiration of the term the sheriff may sell without a venditioni.

A venditioni exponas is a secondary writ which directs the sheriff to expose the property embraced in the levy where he has made a return that he is unable to sell the property for want of buyers or for some other reason after there has been an effort to sell. Frisch et al., v. Miller, 5 Pa. 310; Beale's Execs. v. Commonwealth, 11 S. & R. 299; Progressive Commercial Co. v. Friedman and Balasny, 81 Pa. Superior Ct. 151.

In Beale's Execs. v. Commonwealth, supra, it is said:

"The *vend. exponas* has come into use in this state, but it is not necessary on a levy on personal goods. It is an indulgence to the officer and the defendant. If the officer will not sell, or offer to sell on it, as he was fixed by the return of the *fi. fa.* the issuing a *vend. exponas* does not release him from the liability created by the return."

"The office of a vend. ex. is to sell property previously taken in execution. It is not a writ separate from the fi. fa. but a part of it": McLanahan et al. v. Goodman et al., 265 Pa. 43, 48. It is not like an alias fi. fa. which abandons the lien acquired by levy under the original fi. fa.

From these authorities it is clear that the plaintiff does not need a writ of venditioni exponas to sell the property levied upon by the fi. fa. If the sheriff could proceed to sell after the discharge of the rule which first stayed the execution because the lien of the levy remained, he has the same power to sell when the court discharges the second rule, since the lien of the levy remains. The sheriff's return does not show any attempt to sell or a failure to sell for a want of bidders or for any other cause. But that return simply advises the court, as we have heretofore indicated, what the court already knew, that the sheriff had made no attempt because the court had pro-

hibited him from making it. In our opinion such a return does not interfere in any way with the lien acquired by the levy under the fi. fa. and when the disability is removed, as we intend now to remove it, the sheriff has the right to legally proceed by giving the proper notice as required by law and sell the property under the levy.

For these reasons the rules now before us must be discharged.

And now, March 4, 1935, the rule granted September 14, 1934, upon the petition of the First National Bank of Elizabethville to show cause why the further proceedings under the fieri facias issued to no. 566, September term, 1932, should not be stayed, and the rule granted upon the petition of Lesta M. Latsha December 17, 1934, to show cause why a writ of venditioni exponas should not issue are each hereby discharged and the sheriff is hereby directed to proceed under the original fi. fa.